[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12077
Non-Argument Calendar

_____

D. C. Docket No. 05-60149-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES LYNCH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 16, 2008)**

Before TJOFLAT, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

**I.**

James Lynch appeals his conviction for violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"), by conducting the affairs of the American Maritime Officers Union ("Union") and its member benefit plans ("Plans") through a conspiracy of racketeering activity, by which Lynch and his three co-conspirators, Robert McKay ("Robert"), Michael McKay ("Michael"), and Phillip Ciccarelli, sought to dominate and control the operations of the Union and the Plans in order to maintain their positions and enrich themselves.

Lynch, an employee of the Plans, was a captain of one of the Plans's motor vessels, the "AMOS." As part of the conspiracy, Lynch solicited a cash payment of $30,000 from the owner of a boatyard where Lynch took the AMOS for repairs. Lynch then gave the money to the executive director of the Plans to be used to reimburse employees for their political contributions. Lynch also instructed the boatyard owner to inflate the invoice to cover the cost of repairs to a dive boat owned by Michael. Furthermore, Lynch inflated his expenses on things such as restaurant receipts to cover his personal costs.

On appeal, Lynch contends that because he was a "mere captain," he should not "have been pegged" with involvement in the conspiracy, and the government did not establish the necessary nexus between his acts of racketeering and the

enterprise of the Union and the Plans. He further argues that the predicate acts of which he was found guilty lacked continuity and did not establish a pattern of racketeering.

## II.

We review the sufficiency of the evidence to support a conviction *de novo*, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000). We will uphold the district court's denial of a motion for judgment of acquittal "if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt." *Id.* Determinations of the credibility of witnesses fall within the exclusive province of the jury and may not be revisited by us unless the testimony is "incredible as a matter of law." *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir. 1997) (citation omitted).

## III.

Pursuant to the RICO statute, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

3

racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In order to establish a RICO conspiracy, the government must prove: "(1) that an enterprise existed; (2) that the enterprise affected interstate commerce; (3) that the defendants were employed by or associated with the enterprise; (4) that the defendants participated, either directly or indirectly, in the conduct of the enterprise; and (5) that the defendants participated through a pattern of racketeering activity." *United States v. Browne*, 505 F.3d 1229, 1257 (11th Cir. 2007) (citing *United States v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995), *cert. denied*, ___ S. Ct. ___, 76 USLW 3512 (U.S. Jun. 23, 2008)).

To establish the fifth element of a RICO conspiracy, the government must prove that the predicate acts related to the enterprise charged and that they actually formed a pattern, in that they related to each other and had continuity. *Browne*, 505 F.3d at 1257. Regarding the relationship element, the predicate acts must "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics and . . . not [be] isolated events." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14, 105 S. Ct. 3275, 3285 n.14, 87 L. Ed. 2d 346 (1985) (quoting 18 U.S.C. § 3575(e)). Continuity can be proven under a closed-ended theory – by demonstrating a series of related predicate acts extending over a substantial period

4

of time – or under an open-ended theory – by demonstrating a threat of continuity extending into the future by showing that: (1) the predicate acts include a specific threat of repetition extending into the future indefinitely; or (2) the predicate acts are part of an entity's regular way of doing business. *Browne*, 505 F.3d at 1259-60 (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)).  "Any two predicate acts can be sufficient for the jury to find continuity." *Id.* at 1260.  "Reversal of either a jury's finding of continuity or a conviction on a substantive RICO count is not required simply because some predicate acts are factually insufficient, as long as there remain at least two adequately proven acts." *Id.* at 1261.

The government did not need to prove that Lynch agreed to participate in all of the substantive predicate acts associated with the conspiracy, as a defendant can be found guilty of a conspiracy even if he did not commit the substantive acts, and "[t]he touchstone of liability is an agreement to participate in a RICO conspiracy, which may be shown in two ways: (1) showing an agreement on the overall objective of the conspiracy, or (2) showing that a defendant agreed to commit personally two predicate acts, thereby agreeing to participate in a 'single objective.'" *Id.* at 1264.  Where there is no direct evidence of an agreement on an overall objective, the government can use circumstantial evidence of a scheme or

5

inferences from the conduct of the alleged participants to prove that an agreement existed, in which each defendant must have known that others also were conspiring to participate in the same enterprise. *Id.*

**IV.**

Here, the record demonstrates that the government established, through direct trial testimony, that Lynch committed at least two of the predicate acts charged, including: (1) theft and embezzlement from the Plans by arranging for the boatyard owner to give him $30,000 in cash, to be used by Michael for political contributions, and to inflate the repair invoices for the AMOS to pay for the repair costs for two of Michael's personal dive boats; and (2) theft and embezzlement from the Plans by inflating his own expense submissions and receiving reimbursement for expenses unrelated to his employment. These acts, which evidenced Lynch's indirect participation in the conduct of the enterprise, were sufficient to establish a pattern because they were related to each other – they involved the same purpose of financial enrichment for the co-conspirators – and they had continuity because the conspirators anticipated continuing the acts into the future indefinitely. Therefore, we conclude that the evidence presented by the government was sufficient to allow a reasonable trier of fact to conclude that Lynch was guilty beyond a reasonable doubt. Accordingly, we affirm Lynch's

conviction.

**AFFIRMED.**